UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------------X   Docket No.: 1:23-cv-09106
THORN LAWLESS,

                                                 Plaintiff,                    **COMPLAINT**

                -against-

                                                            **PLAINTIFF DEMANDS**
THE CITY OF NEW YORK,                                            **A TRIAL BY JURY**
NYPD DEPUTY INSPECTOR DANIEL G. MAGEE (TAX 930622),
NYPD OFFICER DIARMUID O'SULLIVAN (TAX 952078), NYPD
MEMBER F/N/U ALVAREZ, AND NYPD MEMBER DOES 1-3,

                                              Defendants.
---------------------------------------------------------------------------------X

      Plaintiff, THORN LAWLESS, by their attorney, Elena L. Cohen of Cohen & Green PLLC, hereby complains of the defendants, upon information and belief, as follows:

### PARTIES, VENUE AND JURISDICTION

1. At all times mentioned herein, plaintiff, Thorn Lawless, was an adult non-binary trans person resident of Kings County, in the State of New York.

2. At all relevant times mentioned herein, defendant, City of New York ("New York City"), was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York and acts by and through its agencies, employees and agents, including, but not limited to, the New York City Police Department ("NYPD"), and their employees.

3. At all times hereinafter mentioned, defendant, NYPD DEPUTY INSPECTOR DANIEL G. MAGEE (TAX 930622), was an adult man employed by the City of New York as a member of the NYPD assigned to the NYPD World Trade Center Command. Defendant Magee is sued herein in his official and individual capacities.

4. At all times hereinafter mentioned, defendant, NYPD OFFICER DIARMUID O'SULLIVAN (TAX 952078), was an adult man employed by the City of New York as a member of the

1

NYPD assigned to the World Trade Center Command and the NYPD Counter Terrorism Unit. Defendant O'Sullivan is sued herein in his official and individual capacities.

5. At all times hereinafter mentioned, defendant, NYPD MEMBER F/N/U ALVAREZ was an adult employed by the City of New York as a member of the NYPD. Defendant Alvarez is sued herein in his official and individual capacities.

6. At all times hereinafter mentioned, defendants, NYPD Member Does 1-3 were adults wearing blue NYPD uniforms and employed by the City of New York as members of the NYPD. The Doe defendants are sued herein in their official and individual capacities.

7. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367, and 42 U.S.C. § 1983.

8. Venue is proper pursuant to 28 U.S.C. § 1391, et seq., in the Southern District of New York, where the plaintiff and defendant City of New York reside, and where the majority of the actions complained of herein occurred.

9. Plaintiff timely served a Notice of Claim on the municipal defendant and complied with all conditions precedent to commencing an action under state law.

10. At least thirty days have elapsed since service of plaintiff's Notice of Claim and adjustment and payment thereof has been neglected or refused.

11. This action has been initiated within one year and ninety days of the accrual of plaintiff's claims pursuant to New York State Law.

## RELEVANT FACTS

*Plaintiff Is Unlawfully Arrested*

12. On November 14, 2022, at about 12:45 p.m. plaintiff was lawfully present at a protest at or around City Hall Park, in the County, City and State of New York.

13. Plaintiff, along with other transgender people and allies, was present at the protest as a counter-protester to a transphobic protest. Plaintiff, along with other transgender people and allies, was protesting in support of transgender rights.

14. At this protest, the police, including the Defendants, targeted those counter-protesting in support of transgender rights by subjecting them to excessive force and brutality. At the same time, the police took no such action against the ant-trans protesters.

15. At this time, approximately four NYPD members consisting of Defendant Magee and some or all of the other defendants approached Plaintiff and grabbed their arms behind their back without any warning, or justification. Defendant Magee injured Plaintiff by violently yanking and twisting their arm.

16. The defendants had not issued any warnings or commands to Plaintiff.

17. Plaintiff told Defendants Magee and John Does 1-3 they were hurting Plaintiff. NYPD Police Officer John Does 1-3 appeared to be cis men wearing NYPD uniforms. Police Officer John Does 1-3 were wearing blue uniform shirts. One of these Doe officers may have been NYPD Officer Diarmuid O'Sullivan (Tax 952078) of the World Trade Center command and NYPD Counter Terrorism.

18. NYPD Deputy Inspector Magee and NYPD Police Officer John Does 1-3 then handcuffed Plaintiff without any justification. NYPD Deputy Inspector Magee and Police Officer John Does 1-3 applied Plaintiff's handcuffs excessively tightly and did not loosen them for an excessively prolonged period despite Plaintiff's repeated requests for them to do so.

19. Magee, O'Sullivan, and John Does 1-3 detained and arrested Plaintiff without consent, probable cause, or lawful justification.

20. NYPD Police Officer f/n/u Alvarez also assisted Magee, O'Sullivan, and John Does 1-3 in in unlawfully detaining Plaintiff.

21. Magee, Alvarez, and John Does 1-3 used unreasonable and excessive physical force in detaining and arresting Plaintiff.

22. As a result of the force used by defendants, plaintiff sustained pain and injuries to their right shoulder, right elbow, and arm, including but not limited to a fractured elbow.

23. Magee, Alvarez, and John Does 1-3 did not read Plaintiff their rights.

24. Rather than issuing Plaintiff a summons or other legal process on the street, NYPD officers loaded Plaintiff into a prisoner transport vehicle and took Plaintiff to One Police Plaza and to the emergency room of a local area hospital where Plaintiff remained in police custody.

25. Because NYPD officers arrested Plaintiff in connection with a protest, they subjected Plaintiff to unreasonable and lengthy NYPD large-scale arrest processing, to which other similarly situated people detained by the NYPD for the same offense(s) with which Plaintiff was charged outside of the protest context are not subjected.

26. As a result, that arrest processing unjustifiably and unreasonably lengthened Plaintiff's detention; curtailed and prevented Plaintiff from exercising Plaintiff's rights to speech, association, and assembly, and to petition the government; cast a chill on Plaintiff's desire to participate in such protected expression in the future; and otherwise injured and damaged Plaintiff.

27. NYPD officers unlawfully searched Plaintiff's person at least four times.

28. During Plaintiff's time in custody, no NYPD officer offered Plaintiff a phone call. And, as the arrest processing procedures the NYPD applied to Plaintiff's arrest because it was made in connection with a protest did not allow for legal counsel or anyone else to contact Plaintiff, or

4

communicate with NYPD officers about Plaintiff's arrest or arrest processing status, no one could locate or contact Plaintiff while Plaintiff was in custody.

29. At about 1:00 a.m. the next day, NYPD Officer Diarmuid O'Sullivan (Tax 952078) of the World Trade Center command and NYPD Counter Terrorism issued Plaintiff a Desk Appearance Ticket based on false allegations that he knew to be false when he issued the summons.

30. Plaintiff's charges were resolved in their favor when they were dismissed on the merits when Plaintiff acceded to an adjournment in contemplation of dismissal.

31. Plaintiff was unlawfully deprived of meaningful access to basic necessities for an extended period of time, and subjected to filthy, crowded, and unsanitary conditions of confinement, while in NYPD custody.

32. NYPD officers further unlawfully subjected Plaintiff to conditions that significantly and unlawfully increased Plaintiff's risk of exposure to the COVID-19 virus, including, but not limited to: forced proximity to other arrestees and NYPD officers in low-ventilation spaces in violation of New York State and City social distancing guidelines; removal of Plaintiff's mask; and exposure to members of the NYPD who overwhelmingly were not wearing masks.

33. Plaintiff should have been consulted with and provided the option to choose between being housed in the men's, women's, or a separate holding cell. Officer O'Sullivan was made aware of Plaintiff's gender identity before Plaintiff's detainment in a segregated men's holding cell at 1PP, and the NYPD personnel failed to abide by these standards.

34. This treatment constituted further harassment by the defendants and denial of plaintiff's rights pursuant to the laws of the United States and of the State of New York, including the New York City Human Rights Law.

35. Upon information and belief, Members of the NYPD created official NYPD paperwork relying on fabricated evidence, including about purported observations of Plaintiff's alleged pre-arrest conduct, and/or forwarded such fabricated evidence to prosecutors and/or initiated charges against Plaintiff, relying on fabricated evidence and without probable cause.

36. At no time did defendants have probable cause to seize, detain or arrest the plaintiff, nor to use any force on plaintiff, nor was it reasonable for the defendants to believe that such cause existed.

37. At no time did any of the defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the heretofore conduct engaged in by their fellow officers.

38. That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

***NYPD's Policies and Practices Relating to Dispersal Orders and Opportunity to Comply***

39. Defendants did not issue Plaintiff any order before they detained and assaulted them.

40. Upon information and belief, there is virtually no NYPD training – and certainly no meaningful NYPD training - focusing on how to utilize the tactics taught at the academy and in in-service training without infringing on the constitutional rights of protesters, such as how to make probable cause determinations or the requirements of providing an alternative avenue of protest, meaningful time, and a path of egress when issuing a dispersal order, and the like.

41. Thus, Plaintiff was given no meaningful opportunity to comply with a(n unlawful) dispersal order because it is the policy, practice, and effect of NYPD trainings that officers frequently do not give such opportunities.

42. The City and the NYPD have been sued repeatedly for the failure to provide meaningful opportunities to comply with dispersal orders, including (but not limited to):

   a. *Peat v. City of New York,* No. 12 Civ. 08230 (S.D.N.Y.), fifteen plaintiffs, during the Occupy Wall Street protests, were arrested on January 1, 2012, on the sidewalk in the East Village and settled a case with Defendant City of New York for $598,000. The settled complaint alleged that plaintiffs were peacefully and lawfully protesting when executive members of the NYPD blocked their path on the sidewalk, encircled them on three sides and a building line on the fourth side. The NYPD made dispersal announcements without providing sufficient time or a path of egress as members of the scooter task force blocked the protesters path of egress.

   b. *Case v. City of New York,* 14-cv-9148 (S.D.N.Y.), complaining of NYPD's policy and practice of failing to ensure that constitutionally meaningful and adequate dispersal orders and opportunities to disperse are given prior to effecting arrests in connection with First Amendment assemblies. *Case* is now trial-ready, including on the opportunity-to-disperse claims. In the decision denying summary judgment in *Case*, the Court also found that the City had notice of the failure to train alleged here for *Monell* purposes. *See Case v. City of New York*, 408 F. Supp. 3d 313, 329-30 (S.D.N.Y. 2019).

   c. *Dinler v. City of New York,* 04-cv-7921 (S.D.N.Y.), granting plaintiffs summary judgment (decision at 2012 WL 4513352, 2012 U.S. Dist. LEXIS 141851) on claims for unlawful arrest where no meaningful opportunity to comply with a dispersal order was given.

43. As noted above, in *Case*, Judge Torres concluded that the same policy and training failures alleged here presented an issue for trial on whether NYPD's policies gave rise to *Monell* liability for "fail[ure] to train officers with respect to providing (1) adequate dispersal notice and (2) a meaningful opportunity to comply with such notice." 408 F. Supp. 3d at 329.

44. As also referenced in *Case* (408 F. Supp. 3d at 329, *citing* Pl. MOL (ECF No. 136) at 34-37), the *only* time the topic of opportunity to disperse comes up in NYPD's training is in a factual summary of a case, appearing in a 1971 Legal Department Bulletin.

45. That is, upon information and belief, there is no training provided to NYPD officers on ensuring protesters are provided a meaningful opportunity to comply with orders to disperse.

46. Upon further information and belief, the NYPD and City do not train officers on (1) informing demonstrators that they must move or why; how many warnings to give before taking enforcement action; (2) what constitutes a meaningful time within which to comply with a dispersal order or the length of time to give people to comply; or (3) the need to give a meaningful opportunity to comply (i.e., a route through which to disperse). *See, e.g., Case*, ECF No. 136 at 34-35.

47. And, according to the Corporation Counsel itself, the NYPD does not demonstrate a consistent commitment to reviewing and responding to external critiques regarding the policing of protests.

48. Indeed, upon information and belief, there have been no protest-related after action reviews undertaken between the 2004 Republican National Convention and until the events of the George Floyd protest – despite numerous lawsuits, judgments, and settlements on the issue.

49. This is in part because of other problematic policies and practices. For example, in a deposition in *Packard v. City of New York,* 15-cv-7130 (S.D.N.Y.), the City of New York testified that in

regards to protest police training it did not review (i) decline to prosecute decisions, (ii) conviction conversion rates, or (iii) allegations and settlements in lawsuits relating to protest.

50. That is, Defendant City apparently does not even review allegations in lawsuits filed by protesters claiming to be falsely arrested during protests in reviewing their policies, in effect taking the position that there is nothing to be learned from lawsuits and settlements.

51. For example, in a 2017 deposition, Defendant City could identify no impact litigation against Defendant City between 2000 and 2011 had on Defendant City's relevant policies, practices, and customs.

52. Thus, in sum, Defendants NYPD and the City have a policy and practice of failing to provide meaningful opportunities to comply with dispersal orders at protests, and that policy resulted in Plaintiff's arrest and injuries.

**FIRST CAUSE OF ACTION**
**(Section 1983 False Arrest Claim Against the Individual Defendants)**

53. Plaintiff hereby realleges and incorporates all of the preceding paragraphs as though they were fully set forth herein.

54. The individual defendants willfully and intentionally seized, searched, detained, and arrested plaintiff, and caused them to be imprisoned, without probable cause, and without a reasonable basis to believe such cause existed.

55. Plaintiff had not been engaged in any criminal conduct, nor were they engaged in any conduct that could reasonably be viewed as criminal nor a basis to justify their arrest.

56. Despite the absence of sufficient legal cause, plaintiff was arrested and jailed.

57. By so doing, the individual defendants subjected plaintiff to false arrest and imprisonment, and thereby violated and aided and abetted in the violation of plaintiff's rights under the Fourth Amendment of the United States Constitution.

58. By reason thereof, the individual defendants have violated 42 U.S.C §1983 and caused plaintiff to suffer the deprivation of their liberty, loss of their constitutional rights, physical injuries, and mental anguish.

**SECOND CAUSE OF ACTION**
**(Section 1983 Denial of a Fair Trial Claim Against the Individual Defendants)**

59. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

60. The individual defendants willfully and intentionally fabricated evidence by falsely memorializing claims to have witnessed plaintiff engaging in criminal or unlawful activity, and then forwarded these materially false claims to the New York County District Attorney's Office in order to justify the arrest of plaintiff, and to justify, bring about and cause plaintiff to be deprived of their liberty and to be criminally prosecuted.

61. By so doing, the individual defendants subjected the plaintiff to denial of a fair trial and violation of their right to due process by fabricating evidence and otherwise providing prosecutors with a materially false and misleading version of events, and thereby violated plaintiff's rights under the Fourth, Sixth, and Fourteenth Amendments of the United States Constitution.

62. By reason thereof, the individual defendants have violated 42 U.S.C. §1983 and caused plaintiff to suffer the deprivation of their liberty, loss of their constitutional rights, physical injuries, and mental anguish.

## THIRD CAUSE OF ACTION
(Section 1983 Excessive Force Claim Against the Individual Defendants)

63. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

64. As a result of the foregoing, defendants subjected plaintiff to excessive force, , and causing their to suffer injuries, with no legal basis, justification or excuse.

65. As a result of the defendants' conduct, the plaintiff was subjected to a level of force by the defendants in excess of what was reasonable under the circumstances.

66. As a result of the foregoing, plaintiff's liberty was restricted and they were put in fear for their physical safety without probable cause or any legal justification, and they were physically injured.

## FOURTH CAUSE OF ACTION
(First Amendment Retaliation through 42 U.S.C. Section 1983 and related New York State Constitutional Provisions against All Defendants)

67. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions … for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d ll Cir. 2013); *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (First Amendment prohibits "adverse governmental action taken against an individual in retaliation" for protected activities.).

68. As a result, even some government actions that would be otherwise lawful become prohibited if in response to protected speech or petition. "Because government retaliation tends to chill an individual's exercise of his First Amendment rights, public officials may not, as a general rule, respond to an individual's protected activity with conduct or speech even though that

conduct or speech would otherwise be a lawful exercise of public authority." *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 688 (1996). The First Amendment thus bars officials' actions where they "caused [the speaker] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" and were "substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *See Keenan*, 290 F.3d at 258.

69. The right to protest is at the heart of the First Amendment, as is the right to publicly and loudly criticize public officials.

70. The Defendants actions, collectively and through *respondeat superior*, constitute illegal First Amendment retaliation in that (1) Plaintiff was exercising a right protected by the First Amendment; (2) the use of excessive force, arrest, and imposition of criminal charges, as well as the falsification of charges, and the denials of process, were motivated or substantially caused by the exercise of that right; and (3) those actions caused injury. *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

71. Even in the generally fraught criminal context, merely "[b]eing subjected to criminal charges is a cognizable concrete harm." *Higginbotham v. City of New York*, 2015 WL 2212242, at *11 (SDNY May 12, 2015). Here, Sergent's protected speech was the but-for cause of the Defendants use excessive force and false arrest against Plaintiff.

72. The Defendant City of New York is liable under this claim under *respondeat superior* for failure to train member of the NYPD and the Defendants in the lawful and proper discharge of their professional obligations including, but not limited, the requirement that they not violate the constitutional rights of citizens.

73. By reason thereof, Defendants have caused Plaintiff to suffer emotional and physical injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

## FIFTH CAUSE OF ACTION
### (Section 1983 *Monell* Claim Against the Municipal Defendant)

74. Plaintiff hereby realleges and incorporates by reference all of the preceding paragraphs as though they were fully set forth herein.

75. Defendant City of New York was responsible for ensuring that reasonable and appropriate levels of supervision were in place within and/or over the NYPD.

76. Defendant City of New York had actual or constructive knowledge that there was inadequate supervision over and/or within the NYPD with respect to its members' abuse of their authority, abuse of arrest powers, excessive force, and fabrication of evidence, and other blatant violations of the United States Constitution and the rules and regulations of the NYPD.

77. Despite ample notice of inadequate supervision, defendants took no steps to ensure that reasonable and appropriate levels of supervision were put in place to reasonably ensure that NYPD members engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers with respect to the general public, including, and specifically, the plaintiff herein.

78. Defendant City of New York deliberately and intentionally chose not to take action to correct the chronic, systemic, and institutional misuse and abuse of police authority by its NYPD employees, and thereby deliberately and intentionally adopted, condoned, and otherwise created through deliberate inaction and negligent supervision, an NYPD policy, practice, and custom of utilizing illegal and impermissible searches, arrests, and detentions, excessive force, and the manufacturing of evidence, in the ordinary course of NYPD business in flagrant disregard of the state and federal constitutions, as well as the Patrol Guide, up to and beyond the plaintiff's arrest.

79. The acts complained of herein are a direct and proximate result of the failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers.

80. The failure of the City of New York and the NYPD properly to select, train, supervise, investigate, promote and discipline police and correction officers and supervisory officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

81. The official policies, practices and customs of the City of New York and the NYPD alleged herein violated plaintiff's rights guaranteed by 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

82. All of the acts and omissions by the individual defendants described above were carried out pursuant to overlapping policies and practices of the municipal defendant in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures, and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

83. Therefore the municipal defendant has not only tolerated, but actively fostered a lawless atmosphere within the NYPD and that the City of New York was deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of the plaintiff's rights in particular.

84. By reason thereof, the municipal defendant has violated 42 U.S.C. §1983 and caused plaintiff to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SIXTH CAUSE OF ACTION
### (Civil Rights Violations Pursuant to New York State Law
### Against the Individual and Municipal Defendants)

85. Plaintiff repeats the allegations contained in each of the foregoing paragraphs as though stated fully herein.

86. Plaintiff was subjected to false arrest, excessive force, denial of due process and fair trial, through the defendants' use of unreasonable force, fabricated evidence and the making of false statements.

87. At no time did defendants have any legal basis for arresting plaintiff, subjecting them to prosecution, or commencing criminal process against them, nor was there any reasonable basis to believe said conduct set forth herein was lawful, reasonable, or otherwise appropriate.

88. The defendants are therefore liable under New York law to plaintiff for false arrest, excessive force, denial of due process and fair trial.

89. By reason thereof, defendants have caused plaintiff to suffer emotional and physical injuries, mental anguish, the loss of their constitutional rights, and unlawful incarceration.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiff hereby demands a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiff demands judgment against the individual defendants and the City of New York as follows:

i. actual and punitive damages against the individual defendants in an amount to be determined at trial;

ii. actual damages in an amount to be determined at trial against the City of New York;

iii. statutory attorney's fees pursuant to, inter alia, 42 U.S.C. §1988 and New York common law, disbursements, and costs of the action; and

iv. such other relief as the Court deems just and proper.

Dated: New York, New York
October 12, 2023

**COHEN&GREEN P.L.L.C.**

By: _____
Elena L. Cohen
J. Remy Green
Jessica Massimi
1639 Centre Street, Suite 216
Ridgewood (Queens), NY 11385
t: (929) 888-9480
f: (929) 888-9457
e:    elena@femmelaw.com
      remy@femmelaw.com
      jessica@femmelaw.com

**GIDEON ORION OLIVER**

By: _____
277 Broadway, Suite 1501
New York, NY 10007
t: 718-783-3682
f: 646-349-2914
Gideon@GideonLaw.com